**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| HANNAH WILLIAMS, | No. 87724-1-I |
| Appellant, | |
| | DIVISION ONE |
| v. | |
| USAA CASUALTY INSURANCE COMPANY, a foreign insurer, | UNPUBLISHED OPINION |
| Respondent. | |

MANN, J. — Hannah Williams was seriously injured in a car accident. In addition to making claims against the driver of the vehicle she was in and the driver of the other car involved in the collision, she made a claim for secondary personal injury protection (PIP) and underinsured motorist insurance (UIM) benefits from her insurer, USAA Casualty Insurance Company (USAA). Williams ultimately sued USAA for breach of contract and later amended her complaint adding extracontractual claims, including violations of the Insurance Fair Conduct Act (IFCA), ch. 48.30.010-.015 RCW, the Consumer Protection Act (CPA), ch. 19.86 RCW, and the duty of good faith.

Williams appeals the trial court's dismissal of her extracontractual claims on summary judgment. We affirm.

I

A

On September 22, 2019, Williams was the front passenger in a vehicle driven by Brandon Parker. Parker failed to yield the right of way at an intersection and pulled out in front of a vehicle driven by Juan Hernandez. Hernandez's vehicle T-boned the front passenger side of Parker's vehicle, gravely injuring Williams, who suffered multiple skull fractures. Williams was airlifted by helicopter to Harborview Medical Center (Harborview).

Parker was insured under a USAA policy issued to his parents. Williams opened a liability claim and a PIP claim under the Parkers' policy.

Williams was also insured under a USAA policy issued to her parents, Erin and Mark Williams. The Williamses' policy had medical coverage limits of $10,000 per person for PIP and $100,000 per person for UIM benefits. On October 2, 2019, at the request of Williams's father, USAA opened two claims under the Williamses' policy: a secondary PIP claim and a UIM claim. Both claims appear to have been opened under the same number: 2346267-022. USAA assigned adjuster Steven Kennedy to Williams's UIM claim.

Kennedy reached out to Williams to discuss her injuries and treatment status. Williams told Kennedy that she would follow up with a specialist to determine what additional treatment was necessary. Kennedy also contacted the liability adjuster under the Parkers' policy, who informed him that the Parkers' liability limits appeared to be adequate to fully compensate Williams for her accident-related injuries and treatment thus far, but did not tell him what the liability limits were. Kennedy entered a file note

indicating that he would follow up every 30 days to inquire about whether Williams had received any additional treatment.

On October 4, 2019, USAA received Williams's medical records from Harborview. On October 11, 2019, Williams's attorney notified USAA that she was being represented by counsel and that she would be seeking available PIP and/or UIM benefits under her parents' policy. On October 17, 2019, USAA started making payments to Williams's medical providers under the secondary PIP claim.

On October 31, 2019, Kennedy again confirmed with the liability adjuster that the limits appeared to be adequate. Nonetheless, the liability adjuster again did not tell Kennedy what the liability limits were. In addition, Kennedy did not know at that time if Williams was still being treated. He believed that letters were sent out requesting an update on the status of her treatment, but did not know if he received a response.

In his deposition, Kennedy explained that the PIP file is kept separate from the UIM file, and he did not have access to any medical bills or records submitted under Williams's PIP claim. In addition, he never received nor requested authorization to access Williams's medical bills and records, as he was unaware of their existence, and because it is not standard USAA practice to do so. Kennedy explained that neither the liability nor the PIP adjuster was allowed to disclose Williams's medical information to the UIM adjuster without Williams's express permission.

On November 11, 2019, Kennedy wrote Williams's attorney asking for an update on the status of her treatment and UIM claim:

> Your claim is unresolved because we are awaiting the resolution of Hannah Williams['s] medical treatment and receipt of the medical records, bills, and other documentation for the evaluation of the potential [UIM]

claim.  Please contact me to discuss the current treatment status of your client.

Williams's attorney did not respond to the letter.

On December 10, 2019, Kennedy entered a file note stating, "file status – no change."  That same day, Kennedy sent another letter to Williams's attorney requesting medical records and Williams's current treatment status.  Williams's attorney again did not respond.

On January 13, 2020, Kennedy sent another letter to Williams's attorney requesting information about her UIM claim:

> Your claim is unresolved because we are currently monitoring the claim to determine if there will be [a UIM] claim for your client. Please send us written verification of the underlying carrier's limits. If a [UIM] claim is presented, please provide us with the medical bills and records for the treatment your client received as a result of the injuries sustained in the motor vehicle accident.  Once we have received written proof of the underlying carrier's limits along with the medical bills and records, we will review your client's claim for resolution.

As with the previous two letters, nothing in the record indicates that Williams's attorney responded.

Having received no response from Williams or her attorney, Kennedy contacted the liability adjuster on February 4, 2020, who once again confirmed that the Parkers' liability limits appeared to be adequate to compensate Williams. Based on that information, Kennedy provisionally closed Williams's UIM claim that same day.  The closing was administrative in nature, and it did not prevent or affect Williams's ability to reopen the claim or USAA's ability to evaluate it.

B

On June 25, 2021, Williams sued the Parkers and USAA. Williams's complaint sought damages against the Parkers for negligence, and against USAA for breach of contract, alleging that Williams suffered damages exceeding the Parkers' liability limits. Kennedy received a copy of the complaint on July 8, 2021.

On July 15, 2021, USAA issued discovery requests to Williams seeking information about her injuries before and after the accident, other medical conditions, incidents, and medical providers.[1] Williams provided responses on November 23, 2021. USAA replied that the information was incomplete and lacked specificity about the nature and cost of the future medical treatment Williams claimed she would need due to the accident.

On December 8, 2021, Williams sent a notice of claim under the IFCA to USAA, accusing it of "engaging in unfair claims practices in handling [Williams]'s injury claims and unreasonable denial and delay in paying benefits owed." On December 15, 2021, USAA's attorney wrote Williams's attorney requesting authorization for the release of William's medical records. The record does not include a response from Williams's counsel. On January 24, 2022, USAA again wrote to Williams's attorney asking for the release of her medical records:

> On December 15, 2022[,] I sent authorizations for the release of plaintiff's records and requested that your client sign and return them by December 29, 202[2,] so that we could collect her records. In that same letter I requested that you provide some dates when plaintiff is available to attend a deposition and that you supplement prior discovery responses if you

---

[1] On September 22, 2021, Williams sent a policy limits demand letter to the Parkers. And on October 25, 2021, the Parkers reached a settlement with Williams, tendering the $300,000 liability limits under their policy and obtaining a release of liability.

have further information/documentation regarding alleged future special damages.  As of this date, we have not received any response.  If you do not intend to return the authorizations please advise so that we may take alternate steps to procure these materials.

On February 3, 2022, USAA wrote Williams's attorney to follow up on the IFCA claim and asking for more information to support Williams's UIM claim:

Please be advised that our assigned attorney James Mendel has been working with you to conduct discovery so that we may obtain the information necessary to evaluate Ms. Williams['s UIM] claim.  We understand that Mr. Mendel has on two occasions requested [that] you [supplement] your prior discovery responses regarding future special damages and return signed authorizations that he has prepared so that we may obtain Ms. Williams['s] medical records.

We will promptly extend a UIM settlement offer if applicable once we have sufficient information to evaluate Ms. Williams['s] claim.

On March 1, 2022, USAA sent another letter to Williams reminding her of the request and pointing her to the duty under her USAA policy to "[a]uthorize [USAA] to obtain medical records and other pertinent records."  There is no record that Williams responded to USAA's letters seeking information on her UIM claim from December 15, 2021, January 24, 2022, February 3, 2022, or March 1, 2022.

On March 16, 2022, USAA deposed Williams.  Williams signed an authorization form releasing her medical bills and records on April 22, 2022.

C

On November 16, 2022, Williams filed an amended complaint adding extracontractual causes of action based on the IFCA, CPA, and for a violation of the duty of good faith.

In October 2023, Williams submitted to an agreed defense medical examination under CR 35 by USAA's forensic medical experts, an orthopedic surgeon and a

-6-

neurologist, to assess Williams's claim that she was experiencing bilateral phantom arm pain due to the accident. The video of the medical examination, submitted to the trial court as exhibit 12, was not included as part of the record on appeal.

On March 6, 2024, USAA deposed Williams a second time. She stated that she was not aware of when USAA sent letters to her attorney asking for information about her UIM claim. Williams also stated that she was not aware of any communications received by USAA from her attorney concerning her UIM claim between October 2019 and the time she filed her initial complaint in June 2021. Williams's understanding was that her attorney "hadn't really received much communication about the claim from [USAA's initial attorney] who was handling it originally," that USAA's initial attorney was "unresponsive for a very long time," and that as of November 2022, USAA had not evaluated or settled her claim despite having the medical records requested.

In November 2024, USAA moved for partial summary judgment on Williams's extracontractual claims. Simultaneously, Williams sought partial summary judgment requesting findings about economic damages and liability related to her contractual UIM claim. On December 6, 2024, the trial court granted USAA's motion and dismissed Williams's extracontractual claims. That same day, the trial court granted in part Williams's motion on the contractual UIM claims based on USAA's stipulation that judgment in the amount of $90,698.01 represented a reasonable and necessary amount of medical costs incurred by Williams as a result of the accident. Nonetheless, the trial court denied summary judgment on Williams's claims for additional contractual costs. Williams unsuccessfully sought reconsideration.

On January 31, 2025, the parties agreed to an order dismissing Williams's remaining contractual UIM claim and rendering the prior summary judgment rulings on the extracontractual claims appealable.

Williams appeals.

II

Williams challenges the trial court's dismissal on summary judgment of her extracontractual claims based on USAA's treatment of her UIM claim.

A

We review a summary judgment order de novo. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). "[W]e engage in the same inquiry as the trial court." Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see also Ranger, 164 Wn.2d at 552. "A 'material fact' is a fact upon which the outcome of the litigation depends, in whole or in part." Haley, 25 Wn. App. 2d at 216 (quoting Morris v. McNicol, 83 Wn.2d 491, 494, 519 P.2d 7 (1974)). On a question of fact, the court must consider the facts in the light most favorable to the nonmoving party, and summary judgment is appropriate only if reasonable persons could reach but one conclusion. Marincovich v. Tarabochia, 114 Wn.2d 271, 274, 787 P.2d 562 (1990).

In Washington, all automobile liability insurance policies must include UIM coverage. RCW 48.22.030(2). UIM coverage applies "whenever a tortfeasor's insurance coverage is insufficient to compensate the victim for all damages suffered." Hamilton v. Farmers Ins. Co. of Wash., 107 Wn.2d 721, 726, 733 P.2d 213 (1987). Under the UIM statute, an "under insured motor vehicle" is a motor vehicle with respect to which all liability coverage "applicable to a covered person after an accident is less than the applicable damages which the covered person is legally entitled to recover." RCW 48.22.030(1). In other words, UIM coverage allows insureds to recover the amount they would have been entitled to receive from a tortfeasor, including medical expenses, loss of income, and other damages. Hamm v. State Farm Mut. Auto Ins., 151 Wn.2d 303, 308, 88 P.3d 395 (2004). Accordingly, "there are two conditions to [UIM] coverage: (1) the 'covered person' must be legally entitled to recover damages; and (2) damages must exceed the limits of liability under all other applicable insurance policies." Hamilton, 107 Wn.2d at 726-27 (citing RCW 48.22.030(1)).

In Washington, UIM claims are treated differently than other insurance claims. Barry v. USAA, 98 Wn. App. 199, 204-05, 989 P.2d 1172 (1999). The reason is that UIM carriers "stand in the shoes of the [underinsured] tortfeasor, and payments made by the UIM carrier are treated as if they were made by the tortfeasor." Hamm, 151 Wn.2d at 308. The UIM carrier is "entitled to set off the amount of any tortfeasor recovery from the amounts owed to an insured under a UIM policy" and "'is allowed to credit the full amount of the tortfeasor's liability coverage against the insured's damages.'" Hamm, 151 Wn.2d at 308 (quoting Hamilton, 107 Wn.2d at 728). Lastly,

the UIM carrier "is entitled to pursue all the defenses against the UIM claimant that could have been asserted by the tortfeasor." Barry, 98 Wn. App. at 205.

B

"In 2007, the legislature passed, and the voters of this state ratified, the [IFCA]." Perez-Crisantos v. State Farm Fire & Cas. Co., 187 Wn.2d 699, 672, 389 P.3d 476 (2017). The "specific purpose of IFCA was to provide insureds with another legal resource against their insurer for wrongful denials." Perez-Crisantos, 187 Wn.2d at 679. Under the IFCA, an insured who is "unreasonably denied a claim for coverage or payment of benefits by an insurer" may bring a legal claim against the insurer and can recover actual damages, costs, and attorney fees. RCW 48.30.015(1), (3).

Williams first argues that the trial court erred in dismissing her claims under the IFCA. Specifically, Williams contends that (1) USAA failed to timely evaluate her UIM claim, (2) the UIM adjuster had Williams's medical records but chose to ignore them, and (3) USAA's provisional closing of Williams's UIM claim constituted a denial. We disagree.[2]

First, Williams has not demonstrated that USAA failed to timely evaluate her UIM claim. The main problem with Williams's argument is that she has not demonstrated that USAA had sufficient information to evaluate the claim. On October 2, 2019,

---

[2] USAA argues that there was no unreasonable denial because Williams never filed a UIM claim. But the USAA policy does not require an express UIM claim or demand: "[w]e will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of . . . [bodily injury] sustained by a covered person and caused by an auto accident." Brian Rauschuber, USAA's CR 30(b)(6) representative, admitted as much during his deposition. In her October 11, 2019 letter, Williams notified USAA that she would be seeking PIP and/or UIM benefits under the policy. Based on that, USAA's argument that Williams never filed a UIM claim is unavailing.

Williams confirmed to Kennedy that she would follow up on any required additional treatment related to the accident. There is no evidence that she did. Further, on three separate occasions—November 11, 2019, December 10, 2019, and January 13, 2020—Kennedy reached out to Williams's attorney seeking additional information, including medical records, in support of her UIM claim. There is no record of any response from either Williams or her attorney.

Second, Williams contends that the UIM adjuster could have gotten her medical records from the PIP file but decided not to. But that is not the case. While the record shows that at least some of Williams's medical records and bills were provided to the PIP claim adjuster, and PIP funds were used to pay these charges, there is no evidence that those same records were provided in support of her UIM claim. Brian Rauschuber, USAA's CR 30(b)(6) designee, testified that although a PIP file can have the same claim number as a UIM file, USAA has two separate mail addresses and fax numbers for PIP and UIM claims, and Williams sent documents only to the PIP file. When Williams's attorney asked Rauschuber how an insured can know that documents are being sent to the wrong address, Rauschuber explained that the three letters Kennedy sent requesting information about Williams's UIM claim were a good indication that he was not getting the documents he needed to evaluate her claim. Indeed, Williams offers no evidence that Kennedy was even aware of medical records being sent to the PIP file. There is no mention of medical records in Kennedy's claim notes. And instead of responding to any of Kennedy's letters requesting information, or requesting an

update about Williams's UIM claim, Williams's attorney inexplicably chose to ignore them.[3]

Lastly, Williams asserts that USAA's decision to provisionally close her UIM claim constitutes a denial because USAA did not consider the medical records in the PIP file and "ghosted" Williams. But this assertion is unsupported by the record or logic. After his three letters went unanswered, Kennedy confirmed with the liability adjuster that the Parkers' liability limits appeared to be adequate to compensate Williams based on the available information at the time. Consequently, the UIM adjuster provisionally closed Williams's UIM claim, with the understanding that the closing was administrative in nature, and Williams's ability to reopen the claim was unaffected. And, as discussed above, the UIM adjuster did not have any medical records to consider because they were sent to the PIP file exclusively. Moreover, it was Williams that ignored the UIM adjuster's several requests for information to evaluate her claim, and thus her contention that USAA "ghosted" her is backwards.

In sum, looking at the facts in the light most favorable to Williams, there is no evidence in the record that USAA unreasonably denied or delayed Williams's UIM claim for coverage or payment. The trial court did not err in dismissing Williams's IFCA claim on summary judgment.

---

[3] In his deposition, Williams's counsel also asked Rauschuber if the records sent to the PIP file were addressed to the UIM adjuster, and whether based on that the PIP adjuster should have requested permission from Williams to share the records with the UIM adjuster. Rauschuber explained that the records were not addressed to the UIM adjuster; rather, his name was included in a box in a form designated for the insured's policy group or USAA's FECA number. Rauschuber also explained that USAA's claim handing guidelines and practices dictate that the UIM adjuster would not have access to the PIP file without Williams's express permission.

III

Williams next argues that the trial court erred in dismissing her bad faith claim.

Insurance bad faith claims are analyzed applying the same principles of any other tort. An insured must show the existence of a duty, breach of that duty, and damages proximately caused by said breach. Smith v. Safeco Ins. Co., 150 Wn.2d 478, 485, 78 P.3d 1274 (2003). To succeed, an insured must show that "the breach was unreasonable, frivolous, or unfounded." St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., 165 Wn.2d 122, 130, 196 P.3d 664 (2008). "The determinative question is reasonableness of the insurer's actions in light of all the facts and circumstances of the case." Anderson v. State Farm Mut. Ins. Co., 101 Wn. App. 323, 329-30, 2 P.3d 1029 (2000).

As we discussed above, while in the UIM context the relationship between the insured and its UIM carrier can become adversarial, the "duty of good faith and fair dealing survives within the UIM relationship." Ellwein v. Hartford Accident & Indem. Co., 142 Wn.2d 766, 780, 15 P.3d 640 (2001), overruled on other grounds by Smith, 150 Wn.2d at 478. "This is because, although the relationship becomes adversarial, the insured still has 'the 'reasonable expectation' that he will be dealt with fairly and in good faith by his insurer.'" Ellwein, 142 Wn.2d at 780 (quoting Craft v. Econ. Fire & Cas. Co., 572 F.2d 565, 568-69 (7th Cir. 1978)).

Insofar as Williams makes a cogent argument, it is that USAA acted in bad faith because its presuit investigation of her UIM claim was based on conjecture rather than on the facts of the case. Specifically, Williams asserts that USAA's presuit investigation consisted only of a call to the liability adjuster. We disagree.

-13-

While it is true that Kennedy contacted the liability adjuster several times to ask whether the Parkers' liability limits appeared adequate to compensate Williams based on the available information at the time, Kennedy also reached out to Williams's attorney on three separate occasions before she filed suit, requesting medical information to evaluate her UIM claim. It is undisputed that neither Williams nor her attorney ever responded to Kennedy or provided the requested information. And while USAA administratively closed Williams's UIM claim due to her lack of communication, it did so with the understanding that it could be reopened at any time.

In light of all the facts and circumstances of the case, there is no evidence that USAA's actions were unreasonable, frivolous, or unfounded. St. Paul Fire & Marine Ins. Co., 165 Wn.2d at 130. The trial court did not err in dismissing Williams's bad faith claim on summary judgment.

IV

Williams also argues that the trial court erred in dismissing her CPA claim.

In order to prevail on a CPA claim, a plaintiff must show five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) causes injury to the plaintiff in his or her business or property, and (5) causation. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986); RCW 19.86.020. The failure to satisfy even one of the elements is fatal to a CPA claim. Hangman Ridge, 105 Wn.2d at 793.

An insured may establish the first element of a CPA claim by showing a violation of RCW 48.30.010 premised on a violation of WAC 284-30-330. Keller v. Allstate Ins. Co., 81 Wn. App 624, 630, 915 P.2d 1140 (1996) (citing Indus. Indem. Co. of the

Northwest, Inc. v. Kallevig, 114 Wn.2d 907, 923, 792 P.2d 520 (1990)). WAC 284-30-330(1)-(19) enumerates 19 "unfair methods of competition and unfair or deceptive acts or practices of the insurer in the business of insurance, specifically applicable to the settlement of claims." But Washington courts have also held that reasonableness is a complete defense to a CPA claim premised on a technical violation of WAC 284-30-330. See Keller, 81 Wn. App. at 633-34 (explaining that a reasonableness standard is implicit in WAC 284-30-330).

On the first element of her CPA claim, Williams asserts that USAA violated several subsections of WAC 284-30-330 by (1) failing to investigate, (2) not requesting authorization to access Williams's medical records for two years, and (3) not making a prompt payment of her UIM claim for over five years.[4] We disagree.

As we explained above, USAA attempted to investigate and evaluate Williams's UIM claim. To the extent that there was any delay in the pre-suit investigation, it was a direct consequence of Williams's and her attorney's conduct in failing to respond to USAA's repeated requests. Further, once USAA received Williams's IFCA notice on December 8, 2021, it sent four letters requesting that she return signed authorizations for the release of her medical records on December 15, 2021, January 24, 2022, February 3, 2022, and March 1, 2022. Williams did not sign an authorization form

---

[4] The specific subsections that Williams asserts were violated by USAA are (1) WAC 284-30-330(4), "[r]efusing to pay claims without conducting a reasonable investigation"; (2) WAC 284-30-330(6), "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; (3) WAC 284-30-330(7), "[c]ompelling a first party claimant to initiate litigation . . . to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings"; and (4) WAC 284-30-330(13), "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."

releasing her medical bills and records until April 22, 2022. Thus, Williams's assertion that USAA did not request authorization to access her medical records in two years has no basis in fact. Lastly, the record shows that throughout the entire case it was Williams and her attorney who ignored pertinent communications about her UIM claim and did not allow USAA to conduct a proper evaluation of the same, let alone make a prompt payment.

Looking at the facts in the light most favorable to Williams, there is no evidence that USAA employed unfair or deceptive acts or practices, and trial court did not err in dismissing Williams's CPA claim on summary judgment.[5]

V

Lastly, Williams argues that the trial court erred by not considering USAA's postsuit conduct in dismissing her claims.

In the UIM litigation context, Washington courts have held that "evidence of an insurer's litigation conduct is rarely admissible because it lacks probative value and has a high risk of prejudice." Richardson v. Gov't Emps. Ins. Co., 200 Wn. App. 705, 719, 403 P.3d 115 (2017). "Allowing litigation conduct to serve as evidence of bad faith . . . could unfairly penalize [insurers] by inhibiting their attorneys from zealously and effectively representing their clients within the bounds permitted by law." Richardson, 200 Wn. App. at 719.

---

[5] Alternatively, Williams argues that USAA violated RCW 48.01.030 by breaching its duty of good faith. See Salois v. Mut. of Omaha Ins. Co, 90 Wn.2d 355, 359, 581 P.2d 1349 (1978). But as we already explained, Williams's bad faith claim was correctly dismissed by the trial court, and thus the first element of her CPA claim cannot be satisfied on that basis.

-16-

Williams first asserts that the trial court should have considered the behavior of USAA's doctor during Williams's CR 35 medical examination. But her assertion is incorrect.[6]

While a video of Williams's CR 35 medical examination was submitted to the trial court as exhibit 12, the video was not included as part of the record on appeal. As the appealing party, Williams "has the burden of perfecting the record so that the reviewing court has before it all of the relevant evidence" to the issues raised. Bulzomi v. Dep't of Lab. & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994); see RAP 9.2(b). "An insufficient record on appeal precludes review of the alleged errors," and Williams failed to provide the court with an adequate record on review. Bulzomi, 72 Wn. App. at 525.

Williams next asserts that the trial court should have considered purportedly harassing questions in Williams's and her parents' depositions. Specifically, Williams contends that USAA demanded to know all of her intimate partners as part of a strategy to get her to "just give up." But that assertion is not supported by the record.

In her responses to USAA's initial interrogatories, Williams stated that she suffered phantom pain in her arms as a result of the accident, and she could not tolerate anyone "to touch her forearms and the crook of her elbows," including her intimate partner. Based on that, USAA's attorney requested that Williams disclose "the identity and contact information of her intimate partner(s)."

---

[6] We note that the trial court did consider the behavior of USAA's doctor in dismissing Williams's bad faith claim. During the hearing on the parties' motions for partial summary judgment, the trial court stated that "[no] reasonable trier [of fact] could find that Dr. Rappaport's conduct in his examination would constitute bad faith if, indeed, that was the basis for [Williams's] bad faith claim." Thus, Williams's assertion is factually incorrect.

In Williams's second deposition, USAA's attorney asked her who her intimate partner was. Williams's attorney instructed her not to answer, arguing that the question went beyond the topics that were allowed by the trial court, and that it was asked for the purpose of harassment. USAA's attorney disagreed and explained that the question was related to Williams's statement about phantom arm pain and who could touch her, a topic well within the parameters of what the trial court had allowed. During Williams's mother's deposition, USAA's attorney asked her if she knew who Williams's intimate partner was. And during Williams's father's deposition, he was asked a similar question. On both occasions, Williams's attorney instructed them not to answer, again arguing that the intent of the question was harassment.

In sum, what the record shows is inconsistent with Williams's assertion that USAA demanded to know all of her intimate partners as a pressure tactic. Instead, USAA's attorneys "zealously and effectively represent[ed USAA] within the bounds permitted by law." Richardson, 200 Wn. App. at 719. If Williams believed that USAA's postsuit conduct was reprehensible, she was not without tools; she could have pursued sanctions through the discovery process.

Because the trial court did not err in dismissing Williams's extracontractual claims on summary judgment, we affirm.[7]

---

[7] As the substantially prevailing party on appeal, and upon compliance with RAP 18.1, RAP 14.2 entitles USAA to its costs and reasonable expenses as defined by RAP 14.3.

Mann, J.

WE CONCUR:

Bink, J.